**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**



FILED

JUL 27 2010

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

LARRY MOORE,

        Plaintiff,

v.                             Case No. 2:09cv549

MICHAEL J. ASTURE,
Commissioner of Social Security,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Larry Moore ("Moore"), brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), by order of reference filed March 9, 2010. For the reasons expressed herein, the Court RECOMMENDS that the Commissioner's decision be REVERSED and the case be REMANDED to allow the administrative law judge to reevaluate whether Moore satisfies the criteria of Listing 12.05(C).

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

On or about May 14, 2007,[1] Moore filed an application for disability insurance benefits under Title II of the Act. (R.[2] at 91-93.) Moore, who was thirty-eight (38) years old at the time, alleged that he was disabled since March 1, 2007, due to diabetes, gout, asthma, and right leg problems. (R. at 91, 125.) Moore completed his high school education (R. at 130), and he worked as a painter at the shipyard for seventeen (17) years. (R. at 114.) Moore's application was denied by the Social Security Administration initially on September 21, 2007 (R. at 51), and upon reconsideration on April 2, 2008 (R. at 52).

On April 16, 2008, Moore requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration. (R. at 62-63.) That hearing was held in Norfolk, Virginia, on May 19, 2009. (R. at 18.) At the hearing, Moore amended his disability onset date to November 20, 2007.[3] (R. at 21.) Moore testified at the hearing (R. at 20, 22-33); he was represented by his attorney, Sarah Harrison (R. at 20). Barbara

---

[1] It appears that the application summary was generated on May 29, 2007. (R. at 91-93.) However, multiple documents indicate that Moore filed the application on May 14, 2007. (R. at 9, 51, 97.)

[2] "R." refers to the transcript of the administrative record of proceedings relating to this case.

[3] Moore amended his disability onset date because he was working full-time until November 20, 2007. (R. at 21.)

2

Byers, a vocational expert, was also present and testified at the hearing. (R. at 20, 33-36.)

On June 1, 2009, the ALJ issued a decision finding that Moore was not entitled to DIB because he was not disabled within the meaning of the Act at any time from November 20, 2007, through the date of the ALJ's decision. (R. at 10, 17.) Specifically, at step one of the sequential disability analysis, the ALJ determined that Moore "has not engaged in substantial gainful activity since November 20, 2007, the alleged onset date." (R. at 11.) At step two, the ALJ determined that Moore suffers from status post fracture of the tibia, history of pulmonary embolism, mental retardation, and adjustment disorder, which the ALJ found to be severe impairments. (R. at 11-12.) However, the ALJ determined that Moore's gout, asthma, and type II diabetes mellitus are non-severe impairments because they are controlled by medication. (R. at 12.) At step three, the ALJ found that Moore "does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1."   Id.   The ALJ then found that Moore had "the residual functional capacity to perform a limited range of light work," and "is able to perform simple, routine, and repetitive tasks due to his moderate limitations in concentration, persistence, and pace." (R. at 14-15.) At step four, the ALJ determined that Moore could not return to any of his past relevant

3

work.  (R. at 15-16.)  However, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (R. at 16-17.) Accordingly, the ALJ concluded that Moore was not disabled within the meaning of the Act.  (R. at 17.)  Moore was forty (40) years old at the time of the ALJ's decision.  (R. at 16.)

On June 3, 2009, Moore requested review of the ALJ's decision by the Appeals Council of the Office of Hearings and Appeals ("Appeals Council").  (R. at 4.)  The Appeals Council denied Moore's request for review on August 17, 2009, stating that it found no reason to review or change the ALJ's decision. (R. at 1.) This makes the ALJ's decision the "final decision" of the Commissioner subject to judicial review here, pursuant to 42 U.S.C. § 405(g).  See 20 C.F.R. § 404.981.

Moore brought the instant action seeking judicial review of the decision of the Commissioner denying his claim for DIB.  Moore filed the instant Complaint on October 21, 2009, which Defendant answered on March 5, 2010.  Moore filed a Motion for Summary Judgment with a memorandum in support on April 22, 2010. Defendant filed a Motion for Summary Judgment and in opposition to Moore's Motion for Summary Judgment with a memorandum in support on May 10, 2010.  Moore filed a response to Defendant's Motion for Summary Judgment on May 20, 2010.  Neither party indicated special circumstances requiring oral argument in this matter; therefore,

4

the case is deemed submitted for decision based on the memoranda.
See Fed. R. Civ. P. 78(b); Local Civ. R. 7(J).

## II. **STANDARD FOR SUMMARY JUDGMENT**

The Court shall grant summary judgment if, viewing the record as a whole, it concludes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). For the evidence to present a "genuine" issue of material fact, it must be "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts are deemed material if they might affect the outcome of the case. Celotex Corp, 477 U.S. at 322-27. In other words, the moving party's submission must foreclose the possibility of the existence of facts from which it would be open to a jury to make inferences favorable to the non-movant. Id.

In deciding a summary judgment motion, the Court must "view[] the record as a whole in the light most favorable to the non-movant." Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). If "the evidence . . . is so one-sided that one party must prevail as a matter of law," the Court should grant summary judgment in that party's favor. Anderson, 477 U.S. at 251-52. Moreover, summary judgment must be granted where the non-moving party "fails to make a showing

5

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex, 477 U.S. at 322, as the non-moving party is required to "set out specific facts showing a genuine issue for trial" with respect to that element, Fed. R. Civ. P. 56(e)(2).

When confronted with cross-motions for summary judgment, "the standards upon which the Court evaluates the motions for summary judgment do not change." Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991). "[T]he court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When deciding cross-motions for summary judgment, a district court retains the responsibility to examine the record to ensure that no disputed issues of fact exist, despite the parties' assurances to that effect." Kavanaugh v. City of Phoenix, 25 F. App'x 516, 517 (9th Cir. 2001) (citing Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1134 (9th Cir. 2001)).

## III. **STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION**

The Commissioner ultimately held that Moore was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is "specific and narrow." Smith v. Schweiker, 795 F.2d

343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam), superceded in non-relevant part by 20 C.F.R. § 404.1517(d)(2); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter, 993 F.2d at 34 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty "to make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456 (citing King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979)). The Court "do[es] not conduct a *de novo* review of the evidence" or of the Commissioner's findings. Schweiker, 795 F.2d at 345. In reviewing for substantial evidence, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for

7

that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Id. (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. Richardson, 402 U.S. at 401. The issue before this Court, therefore, is not whether Moore is disabled, but whether the Commissioner's finding that Moore is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See id.; Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

## IV. **THE SEQUENTIAL DISABILITY ANALYSIS**

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. § 423(d)(1)(A). To meet this definition, the claimant must have a

---

[4] "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

8

severe impairment that makes it impossible to do previous work or any other substantial gainful activity[5] that exists in the national economy. 20 C.F.R. § 404.1505(a); <u>see also</u> 42 U.S.C. § 423(d)(2)(A).

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520; <u>Bowen v. New York</u>, 476 U.S. 467, 470-71 (1986); <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981). First, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). If so, the claimant is *not* disabled and the inquiry is halted. <u>Id.</u> Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a severe impairment.[6] <u>Id.</u> § 404.1520(a)(4)(ii), (c). If not, the claimant is *not* disabled and the inquiry is halted. <u>Id.</u> Third, if the claimant does have a severe impairment, the Commissioner must determine whether the impairment meets or medically equals the severity of any disorder specified in the Listing of Impairments,[7]

---

[5] "Substantial gainful activity means work that (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

[6] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[7] The Listing of Impairments "describes for each of the major body systems impairments that [the Social Security Administration] consider[s] to be severe enough to prevent an individual from doing

20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listings"). <u>Id.</u> § 404.1520(a)(4)(iii), (d). If so, the claimant *is* disabled and the inquiry is halted. <u>Id.</u> Fourth, if the claimant's impairment does not meet or medically equal the Listings, the Commissioner must determine whether the impairment prevents the claimant from performing past relevant work. <u>Id.</u> § 404.1520(a)(4)(iv), (f). If not, the claimant is *not* disabled and the inquiry is halted. <u>Id.</u> Fifth, if the claimant cannot perform past relevant work, the Commissioner must determine whether the claimant is able to perform any other work considering the claimant's residual functional capacity[8] and vocational abilities. <u>Id.</u> § 404.1520(a)(4)(v), (g). If so, the claimant is *not* disabled. <u>Id.</u>

## V. **ANALYSIS**

Moore alleges that the ALJ's decision, finding that he is not disabled, is not supported by substantial evidence because the ALJ "failed to properly evaluate whether the Plaintiff's impairments met Listing 12.05C at Step 3 of the sequential evaluation process." (Pl.'s Mem. Supp. M. Summ. J. 3 [hereinafter Pl.'s Mem. Supp.].) Specifically, Moore argues that the ALJ erred in finding that Moore "does not have additional and significant work-related functional

---

any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

[8] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain). <u>See</u> 20 C.F.R. § 404.1545(a)(1).

limitations" because that finding is inconsistent with the ALJ's finding that Moore suffers from several severe impairments that "significantly limit the claimant's abilities to perform basic work activities." (Pl.'s Mem. Supp. 5-6.) Moore also argues that the ALJ "failed to explain his conclusion that the claimant had not demonstrated an additional and significant work-related functional limitation." (Pl.'s Mem. Supp. 7.)

Defendant does not address the alleged inconsistency in the ALJ's finding that Moore did not have an additional work-related functional limitation. Rather, Defendant argues that "[e]ven accepting, *arguendo*, the flaws in the ALJ's decision alleged by plaintiff, substantial evidence supports a finding that plaintiff was not disabled from working." (Def.'s Mem. Supp. M. Summ. J. 12 [hereinafter Def.'s Mem. Supp.].) Essentially, Defendant argues that even if the ALJ erred in finding that Moore did not have an additional work-related function limitation, the ALJ's ultimate finding that Moore did not meet Listing 12.05 is supported by substantial evidence. To support this argument, the Defendant essentially argues that the ALJ's finding that Moore is not disabled is supported by substantial evidence because Moore's IQ scores are contradicted by other evidence in the record, which indicates that Moore's capacity to work is greater than what is indicated by the IQ test, and due to "the fact that plaintiff was working, and only stopped working due to a lack of work, rather

11

than due to any alleged impairment." (Def.'s Mem. Supp. 10-12.)

As discussed below, the Court FINDS that the ALJ's finding that Moore's impairments did not meet or medically equal Listing 12.05(C) is not supported by substantial evidence because the ALJ applied an improper legal standard. Accordingly, the Court RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED to allow the ALJ to reevaluate whether Moore's impairments meet Listing 12.05(C), applying the appropriate standards.

## A. Applicable Legal Standard

At step three of the sequential disability analysis, the ALJ must determine whether the claimant's impairment meets or medically equals the severity of any disorder in the Listings. 20 C.F.R. § 404.1520(a)(4)(iii). A claimant's impairment meets a Listing if "it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." Id. § 404.1525(c)(3). The impairment medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." Id. § 404.1526(a). If the claimant proves[9] that his condition meets or equals a listed impairment, "he is conclusively presumed to be disabled and

---

[9] The "[c]laimant bears the burden of demonstrating that his impairments meet or equal a listed impairment." Wynne ex rel. Pennell v. Astrue, No. 5:09cv367, 2010 WL 2402843, at *4 (E.D.N.C. May 21, 2010); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) ("Through the fourth step, the burden of production and proof is on the claimant.").

12

entitled to benefits." Bowen, 476 U.S. at 471.

As is true at all steps of the sequential disability analysis, the ALJ must adequately explain the reasons for his decision. See 42 U.S.C. § 405(b)(1); Burnett v. Comm'r Soc. Sec. Admin., 220 F.3d 112, 119-20 (3d Cir. 2000); Cook v. Heckler, 783 F.2d 1168, 1172-73 (4th Cir. 1986). At step three, the ALJ is required to identify the particular Listing(s) relevant to the claimant's condition and compare the medical evidence of the claimant's symptoms to the criteria in the Listing(s). See Cook, 783 F.2d at 1173; Schoofield v. Barnhart, 220 F. Supp. 2d 512, 522 (D. Md. 2002).

## B.  Listing 12.05 - Mental Retardation

Moore claims that his impairment meets Listing 12.05, which sets forth the criteria for mental retardation.  This Listing "contains an introductory paragraph with the diagnostic description for mental retardation . . . [and] four sets of criteria (paragraphs A through D)."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A).  A claimant's impairment meets the Listing if it "satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria."  Id.  Therefore, in order to meet Listing 12.05(C),[10] the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before

---

[10]    Moore only argues that his impairment meets the criteria in paragraph C of Listing 12.05.  (Pl.'s Mem. Supp. 3-6.)

13

age 22" and "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05, 12.05(C). For the set of criteria in "paragraph C, [the Commissioner] will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits [the claimant's] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." Id. § 12.00(A).

## C. The ALJ's Step 3 Analysis

In this case, the ALJ considered whether Moore's impairments met or medically equaled Listing 12.04 and Listing 12.05. (R. at 12-14.) The ALJ ultimately found that Moore's impairments did not meet either Listing. Id. The specific decision challenged in this case is the ALJ's finding that Moore's impairment did not satisfy the requirements of Listing 12.05(C).[11] In his decision, the ALJ found that "[t]he claimant's verbal, performance, and full scale scores are within the acceptable range. However, he does not have additional and significant work-related functional limitations, as explained below." (R. at 14.) The ALJ's further explanation

---

[11] Because Moore does not challenge the ALJ's conclusion that he did not meet Listing 12.04 or paragraphs A, B, or D of Listing 12.05, the Court will not discuss those findings.

14

appears to be incorporated into the RFC assessment,[12] in which the ALJ concluded that Moore could "perform a limited range of light work . . . provided the claimant can alternate sitting and standing, and occasionally bend and squat, but cannot climb or use pushing or pulling movements." (R. at 14-15.)  The ALJ noted that Moore "had full weight-bearing on this leg, was neurovascularly intact, and was returning to work." (R. at 15.)  The ALJ also noted that Moore "can complete simple repetitive tasks, as well as greater detail assignments; can work with others; though his capacity to handle stress in a competitive work setting might be compromised at this time." Id.

## D. Discussion

The ALJ's step three analysis is deficient for a number of reasons.  First, it is unclear whether the ALJ actually considered the diagnostic description in the introductory paragraph of Listing

---

[12]  Moore argues that the ALJ "failed to explain his conclusion that the claimant had not demonstrated an additional and significant work-related functional limitation." (Pl.'s Mem. Supp. 7-8.)  The ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," but the decision must demonstrate "that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Admittedly, it would have been preferable and clearer for the ALJ to provide his explanation immediately after, and in the same section, as his conclusion that Moore did not have an additional work-related limitation. However, the ALJ's explanation within the RFC assessment is sufficient to satisfy the ALJ's duty to explain his decision. See Schoofield, 220 F. Supp. 2d at 522 (stating that remand is not necessary when "there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis.").

15

12.05. Second, the ALJ applied an improper standard when deciding whether Moore had an additional, significant work-related limitation at the second prong of the paragraph C criteria. Because of these deficiencies the Court is compelled to REVERSE the decision and REMAND for further proceedings.

## 1. Diagnostic Description in Introductory Paragraph

As explained above, in order to meet Listing 12.05, the claimant must "satisf[y] the diagnostic description in the introductory paragraph and any one of the four sets of criteria." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A). The introductory paragraph of Listing 12.05 states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning[13] initially manifested during the developmental period; _i.e._, the evidence demonstrates or supports onset of the impairment before age 22." _Id._ § 12.05.

Nowhere in his decision does the ALJ address whether Moore met the diagnostic description in the introductory paragraph of Listing 12.05. In fact, the ALJ completely failed to mention any evidence regarding Moore's condition prior to age 22, even though there is information in the record about Moore's educational capabilities, work history, and an IQ test conducted when he was seventeen (17)

---

[13] "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." _West v. Comm'r Soc. Sec. Admin._, 240 F. App'x 692, 698 (6th Cir. 2007).

16

years old (R. at 214-17, 229, 285.) Without explicitly making the required finding at this initial stage, the ALJ proceeded to discuss the four sets of criteria in paragraphs A through D. (R. at 12-14.) Therefore, it is unclear whether the ALJ actually found that Moore met the requirements of the introductory paragraph.

Although neither party mentions the ALJ's failure to consider the diagnostic description, both parties discuss evidence relevant to the inquiry. Moore expressly argues that the diagnostic description is satisfied because when Moore was seventeen (17) years old, he was administered psychometric testing using the Stanford Binet that indicated that he had an IQ of 50-69, which is in the mentally retarded range. (Pl.'s Mem. Supp. 4-5.) Moore also notes that he performed below grade-level in reading and mathematics, and failed his reading, mathematics, and social studies competencies upon graduation. Id. Defendant appears to imply, in part, that Moore did not meet Listing 12.05, because he did not have the required deficits in adaptive functioning. Defendant alleges that Moore's "life-long history of working," and "independen[ce] in activities of daily living" indicate that he is capable of working in spite of his low intelligence. (Def.'s Mem. Supp. 10-11.) Defendant also notes that "[a]lthough plaintiff was in special-education classes while in school, his program was geared towards vocational education and development of job skills, indicating that his teachers believed him capable of working in

spite of his limitations." (Def.'s Mem. Supp. 12.) Accordingly, it appears that there is evidence in the record from which the ALJ could make a determination, but he failed to do so.

The Court cannot assess whether the ALJ's finding is supported by substantial evidence because there is no finding on this issue. See Peck v. Barnhart, 214 F. App'x 730, 736 (10th Cir. 2006) ("[W]e can only review ALJ decisions that make specific findings on the facts of the case."). Because it is unclear whether the ALJ conducted the analysis required in the initial step, the case must be remanded. Id. ("If [the claimant] does not meet the capsule definition, then the ALJ must make that determination in the first instance."); Ragland v. Astrue, No. 5:08cv152, 2009 WL 1904530, at *6 (E.D.N.C. July 1, 2009).

### 2. Additional Limitations in Second Prong of Paragraph C

At step two of the sequential disability analysis, the ALJ found that Moore's status post fracture of the tibia, history of pulmonary embolism, mental retardation, and adjustment disorder are severe impairments "[b]ecause the impairments significantly limit [Moore's] abilities to perform basic work activities." (R. at 12.) Then at step three, the ALJ found that Moore did not satisfy the second prong of the paragraph C criteria in Listing 12.05 because Moore "does not have additional and significant work-related functional limitations." (R. at 14.)

The second prong of the paragraph C criteria requires that the

claimant demonstrate "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05(C). The additional impairment required at this stage of the analysis "need not be disabling in and of itself," Branham v. Heckler, 775 F.2d 1271, 1273 (4th Cir. 1985), but it must be "a 'severe' impairment[], as defined in §§ 404.1520(c) and 416.920(c)." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A). Therefore, this prong of the paragraph C criteria is met if the ALJ finds, at step two of the sequential disability analysis, that the claimant suffers from a severe physical or mental impairment that is distinct from the claimant's low IQ. See Timmons v. Astrue, 360 F. App'x 984, 987 (10th Cir. 2010) ("[A] '§ 12.05C limitation is significant if the claimant suffers from a severe physical . . . impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function.'" (quoting Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997)); Schuler v. Astrue, No. 09-2126, 2010 WL 1443892, at *5 (C.D. Cal. Apr. 7, 2010) ("[B]ased on the ALJ's own findings, it appears that plaintiff's impairments satisfy the second prong of § 12.05(C) of the Listing because he has a severe mental impairment-i.e., severe major depressive disorder-that is distinct from his qualifying IQ score.").

In this case, the ALJ found that Moore suffered from two (2) additional physical impairments and one (1) additional mental

19

impairment, which are severe, as defined in 20 C.F.R. § 404.1520(c). (R. at 11-12.) Based on this finding, it is evident that the ALJ applied an improper legal standard when he determined that Moore "does not have additional and significant work-related functional limitations." (R. at 14.) Accordingly, the ALJ's decision, finding that Moore did not meet Listing 12.05(C) is not supported by substantial evidence.

### 3. The ALJ's Non-Disability Decision

Defendant asserts that even if the ALJ applied an improper standard at the second prong of paragraph C, the ALJ's finding that Moore is not disabled is supported by substantial evidence. Defendant's first argument essentially undermines the ALJ's finding, at the first prong of paragraph C of Listing 12.05, that Moore's "verbal, performance and full scale scores are within the acceptable range." Defendant then argues that the ALJ's non-disability decision is supported by substantial evidence because, as the ALJ noted at steps four and five, Moore is capable of working.

### a. *IQ Score in First Prong of Paragraph C*

Defendant argues that even if Moore meets the second prong of paragraph C, he does not satisfy the criteria of Listing 12.05 because the ALJ erred when he accepted Moore's IQ scores as valid.

In his step two analysis, the ALJ noted that "[o]n August 30, 2007, Dr. Jeffrey Goodman, a licensed clinical psychologist, . . .

20

conducted an intelligence test which showed the claimant scoring 66, 63 and 62, on his verbal, performance and full scale IQ scores, respectively." (R. at 12.) At step three of the analysis, the ALJ found that these scores were "within the acceptable range" to meet the criteria of Listing 12.05(C). (R. at 14.)

When evaluating the validity of intelligence scores, the ALJ may consider "the narrative report that accompanies the test results[, which] should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(D)(6)(a). "[T]he Commissioner may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole." Clay v. Barnhart, 417 F.3d 922, 929 (8th Cir. 2005); see also Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). In this case, the ALJ evidently accepted the IQ scores as valid.

Defendant argues that the IQ scores should have been disregarded because they are inconsistent with evidence about Moore's capabilities and activities. Defendant notes that Moore "had a life-long history of working," "had the capacity for understanding and adequate attention and concentration to complete different kinds of job duties," and "could complete simple, repetitive tasks, as well as more detailed assignments." (Def.'s Mem. Supp. 10.) Defendant also alleges that Moore could prepare

21

his own meals, do his own shopping, pay his bills, read, watch television, and visit with friends and family. (Def.'s Mem. Supp. 11.) Finally, Defendant claims that the ALJ did not have to accept the scores of the IQ test administered by Dr. Goodman because it was a one-time evaluation conducted by a non-treating physician. Id.

The most that can be said about Defendant's argument is that he has identified evidence that may be inconsistent with the IQ scores; however, he failed to establish that the ALJ's finding is not supported by substantial evidence. In the RFC assessment, the ALJ gave "significant weight to Dr. Goodman's August 30, 2007 consultative evaluation." (R. at 15.) Dr. Goodman opined that Moore's IQ "test result is valid and reliable and does reflect [Moore's] level of ability." (R. at 286.) He noted that Moore "was able to sustain his basic attention and concentration for completion of task assignment" (R. at 286), and "found Mr. Moore to be entirely credible" (R. at 287). Dr. Goodman also noted that Moore "has apparently always functioned in the mild range of mental retardation, but is actually independent with activities of daily living." (R. at 288.) The Court notes that some activities of independent living and work-related abilities are consistent with IQ scores, like Moore's, that fall within the mild range of mental retardation. See Harrold v. Astrue, 299 F. App'x 783, 788 (10th Cir. 2008) ("[T]he Appeals Council erred in relying on [the

22

claimant's] prior work history as a basis for rejecting Dr. Bryant's mild-retardation opinion and the IQ scores."); <u>McKown v. Shalala</u>, 5 F.3d 546, 1993 WL 335788, at *2 (10th Cir. Aug. 26, 1993) (unpublished table decision) ("Such basic matters as self-care and interpersonal cooperation are fully commensurate with the mild mental retardation addressed by 12.05C."); <u>Brown v. Sec'y Health & Human Servs.</u>, 948 F.2d 268, 270 (6th Cir. 1991); <u>Schuler</u>, 2010 WL 1443892, at *5. Finally, just because the ALJ is not required to accept the opinion of a non-treating physician based on a one-time evaluation, does not mean that it is error to credit such an opinion.

On appeal, the Court does not review the evidence <i>de novo</i> or re-weigh conflicts in the evidence. <u>See</u> <u>Schweiker</u>, 795 F.2d at 345; <u>Craig</u>, 76 F.3d at 589. "The ALJ as factfinder has the sole responsibility for weighing the evidence." <u>Muse v. Sullivan</u>, 925 F.2d 785, 790 (5th Cir. 1991). Although the ALJ may have been able to discredit the IQ scores, he did not, and instead accepted them as valid. Although faced with conflicting evidence about the validity of the IQ scores, this Court cannot say that no reasonable mind could accept the record as adequate to support the ALJ's determination that the IQ scores were valid. <u>See</u> <u>Richardson</u>, 402 U.S. at 401. Accordingly, the ALJ's decision at the first prong of the paragraph C criteria is supported by substantial evidence, and cannot be disturbed.

### b. *Moore's Ability to Work*

Defendant's second argument is that despite any errors in applying the criteria of Listing 12.05(C), the ALJ's finding at step five that Moore is not disabled is supported by substantial evidence. Defendant argues that Moore's ability to work is supported by the physical RFC assessments of Dr. Staehr and Dr. Longa, a psychologist's opinion that Moore could "meet the basic mental demands of competitive work on a sustained basis," and an orthopedist's opinion that Moore could return to light work. (Def.'s Mem. Supp. 12.) Defendant argues that "[t]he strongest piece of evidence weighing against a finding of disability in this case is the fact that [Moore] was working, and only stopped working due to a lack of work, rather than due to any alleged impairment." Id.

The ALJ's finding at step five that Moore is not disabled, even if supported by substantial evidence, cannot remedy the ALJ's improper analysis at step three. See McKown v. Shalala, 5 F.3d 546, 1993 WL 335788, at *1 (10th Cir. Aug. 26, 1993)(unpublished table decision)(citations omitted)("[B]ecause a conclusive determination of disability at any step is dispositive regardless of the different standards involved in subsequent steps, we cannot rely on the ALJ's finding of nondisability at step five to disregard a potentially dispositive issue favorable to the plaintiff at step three."); Rainey v. Heckler, 770 F.2d 408, 410

24

(4th Cir. 1985). Moore's RFC assessment and previous work experience, which are highly relevant at steps four and five, cannot be used to prove that Moore is not disabled if he satisfies the criteria of Listing 12.05(C) at step three. See Luckey v. U.S. Dep't Health & Human Servs., 800 F.2d 666, 669 (4th Cir. 1989)("[T]he Secretary may not rely upon previous work history to prove non-disability where the section 12.05(C) criteria are met."); Murphy v. Bowen, 810 F.2d 433, 438 (4th Cir. 1987) ("When a claimant for benefits satisfies the disability listings, benefits are due notwithstanding any prior efforts of the claimant to work despite the handicap."); Lowery, 979 F.2d at 837 ("[A]n ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the IQ score as valid and finds that the claimant meets or equals the criteria of a listed impairment.").

### 4.  Remand Required

Although the Court FINDS that Moore has satisfied both prongs of the paragraph C criteria, the Court must remand the case for further proceedings.  A court may reverse and award benefits or affirm despite an ALJ's error "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review." Fisher-Ross v. Barnhart, 431 F.3d 729, 734 (10th Cir. 2005).  As explained in Section V(D)(1), the ALJ's decision does not make any finding about Moore's adaptive functioning or make any reference to Moore's condition prior to age

25

22. Furthermore, the parties point to conflicting evidence in the record, which could "by no means conclusively resolve the question one way or the other." <u>Peck</u>, 214 F. App'x at 736. Because the ALJ failed to make a finding regarding the diagnostic description and there is conflicting evidence on the issue, the Court is compelled to remand the case to the ALJ for further proceedings.

On remand, the ALJ shall evaluate whether Moore meets the diagnostic description in the introductory paragraph of Listing 12.05. If Moore does satisfy the criteria in the diagnostic description, then Moore's condition meets Listing 12.05(C), and the Commissioner shall award benefits.

### E. Conclusion

For the reasons discussed above, the Court FINDS that the ALJ's finding that Moore did not suffer from an additional limitation is not supported by substantial evidence. The ALJ's finding that Moore had a valid IQ in the acceptable range to meet the criteria of paragraph C is supported by substantial evidence. However, because the ALJ did not make any finding regarding the diagnostic description, the Court cannot evaluate whether the ALJ erred in finding that Moore did not meet Listing 12.05(C). The ALJ's failure in this respect requires this Court to reverse the decision and remand the case to the Commissioner for reexamination consistent with the foregoing recommendation.

## VI. **RECOMMENDATION**

For the foregoing reasons, the Court RECOMMENDS that Defendant's Motion for Summary Judgment be DENIED, that Plaintiff's Motion for Summary Judgment seeking disability insurance benefits be DENIED IN PART, but that the motion be GRANTED to the extent of vacating and remanding the Commissioner's decision, and that the matter be REMANDED to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

## VII. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1):

1. Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's specific objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140, 153-54 (1985); Carr v. Hutto, 737 F.2d 433, 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

F.Bradford Stillman

United States Magistrate Judge

Norfolk, Virginia

July 27, 2010

**CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed *(ECF)*

this date to the following:

Scott Bertram Elkind, Esq.
Elkind & Shea
801 Roeder Road, Suite 550
Sliver Spring, Maryland 20910
*Counsel for Plaintiff*

Anita Kay Henry, Esq.
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
*Counsel for Defendant*

Virginia Lynn Van Valkenburg, Esq.
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
*Counsel for Defendant*

Fernando Galindo,
Clerk of Court

By: _____
Deputy Clerk

July 27, 2010

29